UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CECIL, | No. 2:13-cv-1923 TLN KJN P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| JEFF BEARD, et al., | |
| Defendants. | |

Plaintiff is a state prisoner housed at High Desert State Prison ("HDSP"), proceeding without counsel. On October 3, 2013, plaintiff filed a motion for injunctive relief seeking a high risk transfer for surgery to repair plaintiff's abdominal hernia. At the court's request, R. Lawrence Bragg, Deputy Attorney General, by special appearance, filed a status report on November 14, 2013, concerning plaintiff's medical care for his hernia. Plaintiff filed two declarations in response. As set forth more fully below, the court finds that plaintiff's motion should be denied without prejudice.

<u>Plaintiff's Motion</u>

Plaintiff contends that due to his health issues, a cardiology standby is required, and the surgical unit in Susanville is not equipped for cardiology issues. (ECF No. 19 at 4.) In his verified complaint, plaintiff states that he was diagnosed as high risk medical on January 10, 2012. (ECF No. 10 at 3.) Plaintiff alleges that he is under chronic care for acute heart disease, with total occlusion of his right coronary artery, and also has an aneurysm in the left common

1

iliac artery just off the aortic vessel, with an abdominal hernia just above the aneurysm, protruding out.  (ECF No. 10 at 3.)  Plaintiff is 67 years old.  (ECF No. 10 at 5.)

Plaintiff claims that prior to his state prison incarceration, he was being worked up by the USC Hospital while he was held in the Los Angeles County Jail, "in attempts to stabilize [plaintiff's] heart disease in order to attack the abdominal hernia."  (ECF No. 19 at 3-4.)  On March 18, 2013, while housed at HDSP, plaintiff was recommended for high risk medical transfer to RJD.  (ECF No. 19 at 4.)  On March 27, 2013, Dr. Rohlfing agreed with the high risk transfer, and on April 17, 2013, the Classification Staff Representative ("CSR") endorsed plaintiff for RJD transfer.  Plaintiff states this transfer recommendation expired on August 15, 2013.   On August 26, 2013, the RJD transfer recommendation was reaffirmed by the CSR, and included a revised December 24, 2013 expiration date.  (ECF No. 19 at 4-5.)

Plaintiff contends this 21 month delay in providing plaintiff with the medical transfer is reckless and constitutes deliberate indifference to his serious medical needs, citing Jett v. Penner, 439 F.3d 1091, 1096-98 (9th Cir. 2006).  (ECF No. 4.)  Plaintiff declares that he has repeatedly complained about his ongoing abdominal hernia pain, "with nothing being done" (ECF No. 10 at 5), and was told "we're hoping and waiting for your high risk medical transfer."  (ECF No. 19 at 6.)  Plaintiff claims that the medical department at HDSP are hesitant to push the medical need transfer, stating it's a custody and classification issue, not medical."  (ECF No. 19 at 6.)

The exhibits appended to plaintiff's complaint reflect that the CSR elected to retain plaintiff at HDSP on February 8, 2012, "noting that the medical risk factor is not an absolute but is a preference since [plaintiff was] not being placed in a Minimum Support Facility, Camp, or out of state correctional facility where medical resources may be limited.  The CSR indicated that a transfer at this time would not be financially prudent and overrode the preference to retain [plaintiff] at [his] current location."  (ECF No. 10 at 20.)  While the third level appeal decision states that HDSP is able to accommodate plaintiff's needs, the reviewing officials failed to address plaintiff's need for hernia repair, his attendant pain, or the complications he faces based on his heart disease and age.

////

2

Plaintiff provided a copy of the January 10, 2012 medical classification chrono which states that plaintiff is at high medical risk, has a history of hypertension, coronary artery disease with history of myocardial infarction or heart attack, total occlusion of his right coronary artery, and a history of left iliac artery aneurysm. (ECF No. 10 at 25.)

Plaintiff was provided an accommodation chrono on February 1, 2012, which provides him with a permanent ground floor cell and bottom bunk, mobility vest, and a physical limit to job assignments specifying no lifting over 25 pounds. (ECF No. 10 at 28.)

Standards

Because this motion has not been served on defendants, it effectively seeks a temporary restraining order.[1] While it is the practice in this district to apply the same standards to motions for temporary restraining orders and motions for preliminary injunction, see, e.g., Aiello v. One West Bank, 2010 WL 406092, *1 (E.D. Cal. 2010), a temporary restraining order will be granted only in the most extraordinary of circumstances. "Except in the most extraordinary of circumstances, no temporary restraining order shall be granted in the absence of actual notice to the affected party and/or counsel, by telephone or other means, or a sufficient showing of efforts made to provide notice. See Fed. R. Civ. P. 65(b)." Local Rule 231(a).

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 571 F.3d 960, 978 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 375-76 (2008).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the

---

[1] A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." See Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. See generally, Fed. R. Civ. P. 65; see also, E.D. Cal. L. R. ("Local Rule") 231(a).

harm." 18 U.S.C. § 3626(a)(2).  Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff."  Committee of Central American Refugees v. I.N.S., 795 F.2d 1434, 1441 (9th Cir. 1986), quoting Martin v. International Olympic Committee, 740 F.2d 670, 675 (9th Cir. 1984).

Status Report as to Medical Care

The Deputy Attorney General provided two declarations:  one from the litigation coordinator, and another from Dr. Rohlfing, one of plaintiff's treating physicians.  (ECF No. 24.)  The litigation coordinator declares that plaintiff was endorsed for medical transfer to RJD on April 17, 2013, but that plaintiff has not yet been transferred because of a lack of available space at RJD.  (ECF No. 24 at 4-5.)  Plaintiff is on a waiting list, along with other Level III Sensitive Needs Yard inmates with significant medical needs, and due to plaintiff's medical condition, he "has priority on this waiting list over other inmates with medical needs which are not as serious." (ECF No. 24 at 4.)  Plaintiff's endorsement for transfer was extended on August 26, 2013.  (Id.)

On November 8, 2013, Dr. Rohlfing declares that plaintiff was diagnosed with an umbilical hernia, but that based on the doctor's examination, the hernia is not incarcerated or strangulated, and is not adversely affecting other body organs.  (ECF No. 24 at 7.)  Dr. Rohlfing opined that surgery to repair plaintiff's hernia "is medically necessary but would proceed on an elective basis, rather than on an emergency basis."  (ECF No. 24 at 7.)  Dr. Rohlfing states that plaintiff is prescribed Ibuprofen, 600 mg. twice per day for plaintiff's pain complaints.  (ECF No. 24 at 8.)

Dr. Rohlfing is aware of plaintiff's history of prior myocardial infarction and occlusion of the right coronary artery, and these conditions were treated with the insertion of stents and are currently controlled through the use of medication, including statins and nitroglycerin.  (ECF No. 24 at 8.)  In addition, plaintiff is examined regularly by a cardiologist who is not employed by the California Department of Corrections and Rehabilitation ("CDCR").  The last examination by such a cardiologist was July 30, 2013, with no further cardiac procedures recommended, and a

4

follow-up exam recommended in six months. (ECF No. 24 at 8.) Dr. Rohlfing noted that plaintiff's high blood pressure is being treated and is controlled with medication; plaintiff's last blood pressure reading was 114/80, within normal range for a person of plaintiff's age. (Id.)

In addition, plaintiff was examined by a local surgeon, Dr. Syverson, who is not employed by CDCR, in connection with plaintiff's umbilical hernia. (ECF No. 24 at 8.) Due to plaintiff's cardiac issues, Dr. Syverson is reluctant to perform plaintiff's hernia repair surgery in Susanville because there are inadequate resources in the Susanville area to address cardiac complications that may arise during the surgery. (Id.) Dr. Rohlfing declares that on April 17, 2013, plaintiff was endorsed for a transfer to RJD, which has the resources to perform the hernia repair and to address any cardiac issues that may arise. Dr. Rohlfing confirmed that the endorsement for transfer was renewed on August 26, 2013. (Id.)

Dr. Rohlfing declares that he is aware that plaintiff was previously diagnosed with a left iliac artery aneurysm which was treated surgically through a by-pass procedure. (ECF No. 24 at 8.) The doctor notes plaintiff's concern that the materials used in the by-pass procedure "might be breaking down." (Id.) Dr. Rohlfing declares that he conducted an ultrasound procedure on plaintiff and "verified that the by-pass is not breaking down or deteriorating and that the aneurysm is not enlarging." (ECF No. 24 at 8.) Dr. Rohlfing opined that the medication prescribed to control plaintiff's blood pressure "is having a positive effect on the aneurysm and is helping to keep the aneurysm from enlarging." (ECF No. 24 at 8-9.)

Plaintiff's Reply

In a declaration signed November 21, 2013, plaintiff contends that Dr. Rohlfing omitted plaintiff's recent complaint of a large lump in his left groin area, and asks whether the aneurysm stent is clogged. (ECF No. 26 at 1.) Plaintiff also argues that Dr. Rohlfing failed to address plaintiff's complaint that the hernia twists, causing plaintiff pain at the level of 12 on a 10 point scale. Plaintiff provided copies of medical records, noting he was prescribed stool softeners for the pain, and complains that it always takes 14 days to see the doctor. (ECF No. 26 at 2.) Plaintiff also declares that the recent ultrasound ordered by Dr. Rohlfing was wrongly administered because the technician was on the phone during the entire test, only concentrated on

the belly button area, and wouldn't listen to plaintiff's complaints that the lump was in his groin area, not the belly button area. (ECF No. 26 at 3.) Plaintiff contacted his vascular surgeon, who advised plaintiff to obtain another ultrasound. (Id.) On November 13, 2013, plaintiff saw the clinic nurse, and explained his need for another ultrasound. The nurse scheduled plaintiff to again see Dr. Rohlfing, resulting in further delay. (Id.) Plaintiff complains that prison medical staff do not view his concerns as an emergency, and notes that if the aneurysm gets "so big that it cracks or pops, it's a 'bleed-out' in seconds," which he claims is why in 2012 Dr. [sic] Miranda[2] ordered plaintiff's high risk medical transfer, because "the issue would be fatal." (ECF No. 26 at 3.) Plaintiff also provided the declaration of inmate Albert Lamonte, who was recently transferred from RJD to HDSP. (ECF No. 26 at 4.) Mr. Lamonte declares that he was at RJD for four years, and that on October 7, 2013, when he was transferred from HDSP to make room for medical inmates, there were "numerous beds available. Each building had anywhere from 10 to 20 beds unoccupied." (ECF No. 26 at 4.)

On November 26, 2013, plaintiff signed a declaration stating that he was seen by Dr. Rohlfing in response to plaintiff's request dated November 13, 2013. (ECF No. 27 at 1.) Plaintiff claims he discussed the prior ultrasound test with Dr. Rohlfing, and how it was performed incorrectly, and that another ultrasound was ordered to see if the stent was clogged. (Id.) Plaintiff stated that on November 25, 2013, he was informed by his counselor that she was preparing an extension for plaintiff's medical transfer to RJD because she believed that his transfer to RJD would not take place before the current endorsement expires on December 24, 2013. (ECF No. 27 at 2.)

Plaintiff's Medical Records

The medical records provided by plaintiff reflect the following:

On February 1, 2013 plaintiff completed a Health Care Services Request Form, stating that his abdominal hernia had shifted and become painful. Plaintiff noted his fear that it may have twisted. (ECF No. 26 at 5.) Plaintiff was seen by the triage nurse on February 2, 2013, at

---

[2] The medical records reflect that R. Miranda is a Certified Physician's Assistant ("PAC").

1  plaintiff's cell door. Plaintiff showed his abdomen, and the nurse noted that the protrusion "on
2  front is minimal. No discoloration of skin. [Plaintiff] said it [flared] up yesterday. He describes
3  reducing it on his own. He said it was larger yesterday. He expressed fear that it will become
4  [flared] up." (Id.) Plaintiff was scheduled a routine appointment (within 14 calendar days). (Id.)

On February 13, 2013, plaintiff was seen by his primary care provider. (ECF No. 26 at 6.)
Plaintiff's blood pressure was 116/62. (Id.) Plaintiff stated that he had "an increasing level of
mid-abdominal umbilical hernia pain that is dull and does not radiate, intermittent, and 4/10 on
pain scale. He is concerned about hernia strangulation and wants a surgical evaluation. Also, he
wants a refill on stool softeners for constipation." (Id.) Plaintiff denied having vomiting,
diarrhea, malaise, or abdominal pain that day. The medical provider noted a referral to surgery
for surgical evaluation for plaintiff's hernia, that plaintiff was "stable now," "reassurance," and
"avoid exertion as much as possible." (Id.) Plaintiff's prescription for constipation was refilled.

On February 15, 2013, a physician completed a Health Care Services Request Form
seeking a surgical consult for plaintiff's umbilical hernia. (ECF No. 26 at 11.) The consult was
approved on February 20, 2013. (Id.)

On March 3, 2013, plaintiff completed a Health Care Services Request Form complaining
that his abdominal hernia "attempted to twist again today and, as painful as it [was], [plaintiff]
was able to work it back into position. Pain scale was 12 on 10. Request to see surgeon, ASAP."
(ECF No. 26 at 7.) Plaintiff was seen by the triage nurse on March 4, 2013, and his complaint
was recorded as: "My hernia twisted yesterday. Then I had a bowel movement." (Id.) His blood
pressure was recorded as 118/80. (Id.) Plaintiff was scheduled for a routine appointment with his
primary care physician and advised to "resubmit 7362 if no [bowel movement] and area raises
up." (Id.)

On March 18, 2013, plaintiff was seen and examined by Dr. Rohlfing. (ECF No. 26 at 8.)
Plaintiff's blood pressure was 125/80. Dr. Rohlfing noted plaintiff's pain was controlled by
Tylenol, surgery consult was pending, Dr. Rohlfing assessed plaintiff as having a "history of
recent temporary incarceration of hernia." (ECF No. 26 at 9.)

////

On March 18, 2013, plaintiff consulted with local surgeon Dr. Syverson, who set forth the reason for the consult:

> This 66 year old male complains of a painful enlarging umbilical hernia that he has had for years which has recently been incarcerated briefly, but which he was able to reduce himself, thus preventing it from becoming increasingly painful. Since having that experience of temporary incarceration he has not had any further experience like that.

(ECF No. 26 at 10.) Dr. Syverson noted plaintiff's past, relevant, surgeries: coronary artery stent placement; left iliac artery stent placement (plaintiff stated he had a completely occluded right coronary artery); a symptomatic left iliac aneurysm; right inguinal hernia repair in the remote past. (Id.) Plaintiff's relevant prescriptions were noted as: Tylenol 325 mg twice daily; Aspirin, 325 mg. daily; Atorvastatin (Lipitor); Docusate 100 mg b.i.d.; Metoprolol; and Nitroglycerin. Dr. Syverson's recommendations were:

> The patent would be appropriate for repair or umbilical hernia but he will require cardiology clearance prior to having surgery. Furthermore, the patient expressed concerns regarding the fact that he has a lot of risk with any anesthesia and with any surgery. He noted that he has been told by his counselor that he is on the short list to be transferred to the California State Department of Corrections Hospital for treatment of high risk patients. He believes he would be better off having surgery done at that location.
>
> I did not try to dissuade him from this feeling, as I agree he probably is a high risk patient.

(ECF No. 26 at 9.)

On March 27, 2013, Dr. Rohlfing saw plaintiff for his umbilical hernia. Dr. Rohlfing noted that plaintiff's high risk medical was cleared for RJD, but they were waiting for endorsement. (ECF No. 26 at 12.) Dr. Rohlfing recommended that plaintiff wait until he gets to RJD to have the hernia repair; Dr. Rohlfing noted that plaintiff agreed with that plan. (Id.)

On June 3, 2013, plaintiff requested refills of his docusate sodium (stool softener), and Tylenol - arthritis pain medication. (ECF No. 26 at 14.) It appears a new order was written by plaintiff's primary care physician. (Id.)

On June 13, 2013, plaintiff completed another Health Care Services Request form, asking to see the medical doctor because his abdominal hernia wasn't getting any better. (ECF No. 26 at

15.) It appears plaintiff sought the assistance of medical staff to get his medical transfer moving. (Id.)  Plaintiff was scheduled an appointment on June 21, 2013.  (Id.)

On June 21, 2013, Dr. Rohlfing saw plaintiff for his umbilical hernia, as well as other complaints.  (ECF No. 26 at 16.)  Dr. Rohlfing noted an "enlargement [Left] groin area."  (Id.)  Dr., Rohlfing noted plaintiff was awaiting transfer to RJD, and "possible iliac aneurysm. Ultrasound area."  (Id.)  On June 26, 2013, Dr. Rohlfing signed a consult for plaintiff to receive an ultrasound of his iliac artery stent.  (ECF No. 26 at 18.)  The consult was approved on June 26, 2013, and the ultrasound performed on July 3, 2013.  (Id.)  Plaintiff did not provide a copy of the ultrasound results.

On July 6, 2013, plaintiff completed a Health Care Services Request form stating that his abdominal hernia pain was a 7 or 8 on a scale of 10, and asked to see a doctor.  (ECF No. 26 at 19.)  Plaintiff was scheduled an appointment for July 17, 2013.  (Id.)

Discussion

The Supreme Court has stated that only the " 'the unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)) (citation omitted).  To prevail on the merits of his deliberate indifference claim, plaintiff must show that the prison medical staff knew of and disregarded an excessive risk to an inmate's health.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104-5.  The Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner."  Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992), overruled on other grounds by Saucier v. Katz, 533 U.S. 194 (2001).

The undersigned is concerned about the delay in providing plaintiff hernia repair surgery. Indeed, if the applicable standard were based on what is reasonably necessary to address plaintiff's medical condition, preliminary relief might be appropriate.  However, the standard here is whether plaintiff has shown that he is likely to succeed in demonstrating that defendants acted

with deliberate indifference to plaintiff's medical needs.  In the context of a preliminary injunction, this standard is much more difficult to meet.

First, inmate Lamonte is not qualified to testify as to whether RJD has beds available for plaintiff.  While there may have been "unoccupied" beds when Mr. Lamonte left RJD on October 7, 2013, Mr. Lamonte does not have access to prison records to determine whether the beds were not occupied for other reasons, or whether such beds remain unoccupied.  Moreover, because there is a waiting list for admission to RJD based on medical needs, Mr. Lamonte does not know whether unoccupied beds were subsequently assigned to inmates with more serious medical needs than plaintiff.  Furthermore, it appears plaintiff's placement is complicated by his status as a Level III and Special Needs Yard inmate.  (ECF No. 24 at 4.)  During plaintiff's January 24, 2012 program review, the classification committee noted that there are only three institutions that can accommodate plaintiff, including RJD.  (ECF No. 10 at 23.)

Second, despite plaintiff's claim that PAC Miranda ordered plaintiff's high risk transfer on January 10, 2012, it appears plaintiff was endorsed for transfer to RJD on April 17, 2013.  That transfer has been extended once, on August 26, 2013, and is due to expire on December 24, 2013.  The record reflects that plaintiff has received extensive medical treatment for myriad medical ailments, and is currently receiving medical attention while he awaits transfer.

Third, Dr. Rohlfing states that the hernia is not incarcerated or strangulated, and is not adversely affecting plaintiff's other organs.  Dr. Rohlfing opines that while it is medically necessary to repair plaintiff's hernia, it can proceed on an elective basis rather than on an emergency basis.  Indeed, Dr. Syverson noted plaintiff's self-report that plaintiff has had his umbilical hernia "for years."  (ECF No. 26 at 10.)  Plaintiff adduced no evidence that he would suffer irreparable injury if his hernia repair surgery was not performed, or that the umbilical hernia presents a risk to the aneurysm in his left iliac artery.

Fourth, the medical records provided do not reflect that plaintiff presented to clinic with repeated or persistent complaints of severe pain that were ignored by prison officials.  Rather, the records reflect plaintiff represented his pain as severe when he had one temporary incarceration of the hernia, which had not repeated (ECF No. 26 at 10), and he expressed pain at the level of 7 or

8 on one other occasion. Dr. Rohlfing declares plaintiff is prescribed Tylenol for pain, Plaintiff provided no medical records demonstrating that plaintiff complained that Tylenol was not effective in addressing his hernia pain. The medical records suggest that plaintiff's hernia worsens when he becomes constipated, and that plaintiff is prescribed stool softeners to address this issue.

Finally, by separate order, the court has screened plaintiff's complaint and determined that plaintiff failed to name as defendants the individuals responsible for the alleged delay, and failed to allege facts demonstrating that each named defendant acted with a culpable state of mind. Therefore, until plaintiff has adequately alleged facts demonstrating that appropriately-named defendants are deliberately indifferent to plaintiff's serious medical needs, preliminary injunctive relief is not appropriate.

For all of the above reasons, at this time, it is not clear that plaintiff will likely succeed on the merits of his claim, or that he is likely to suffer irreparable harm absent the extraordinary relief requested. Therefore, the undersigned recommends that plaintiff's motion for injunctive relief be denied. IT IS HEREBY RECOMMENDED that plaintiff's October 3, 2013 motion for injunctive relief (ECF No. 19) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 13, 2013

ceci1923.pi

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE