UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY CECIL, | No. 2:13-cv-1923 TLN KJN P |
| Plaintiff, | |
| v. | ORDER |
| JEFF BEARD, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel. On August 15, 2014, plaintiff filed a document styled, "Ex parte Motion Under Rule 35, Federal Rules of Civil Procedure, Medical Examination." (ECF No. 68.) Defendants filed an opposition with exhibits, and plaintiff filed a reply. As set forth more fully below, plaintiff's motion for medical examination is denied.

The Parties' Arguments

Plaintiff contends that his physical condition will become a serious controversy very shortly, and seeks a court order requiring the California Department of Corrections and Rehabilitation ("CDCR") to take plaintiff to an outside major hospital for a "full physical examination by a certified medical doctor." (ECF No. 68 at 1.) Plaintiff claims he was transferred to R.J. Donovan State Prison ("RJD") from High Desert State Prison ("HDSP") for hernia repair surgery. (ECF No. 68 at 2.) Plaintiff claims that once he arrived at RJD, he discovered there was an ongoing FBI investigation into inmate deaths at RJD. Plaintiff claims his

1

primary care physician informed him that RJD doctors allow "hernias to repair themselves," and alleges that Dr. Pankaj Karan was fired shortly after plaintiff's hernia was diagnosed. (ECF No. 68 at 2.) Plaintiff states that he was referred to a vascular surgeon due to the large lump above plaintiff's aneurysm "which is considered another hernia, possibly caused by the irritation from the abdominal hernia's excessive intestines rubbing above the iliac artery aneurysm." (Id.) Plaintiff alleges that prison officials at RJD are delaying, denying and interfering with new primary care providers medical referral requests, which plaintiff believes is due to the medical civil rights lawsuit pending herein. Plaintiff contends that outside appointments are being cancelled.

Plaintiff alleges that both hernias are excruciatingly painful, with nothing being done; at times, plaintiff reports the pain is a 9 on a scale of 10, causing tears. Plaintiff's hernia is not "incarcerated."

Defendants oppose plaintiff's motion for the following reasons:

1. Because plaintiff was transferred to RJD, plaintiff seeks relief from the CDCR and RJD, neither of which are parties herein, citing Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969). (ECF No. 77 at 2.)

2. Defendants argue that the remedy plaintiff seeks is inappropriate because Rule 35 is a discovery tool "whose purpose is to ensure that civil trials no longer need to be carried out in the dark." (ECF No. 77 at 2.) Defendants argue that plaintiff seeks to obtain a second opinion in order to question the medical judgment of health professionals at RJD. Defendants contend that plaintiff may file a health care appeal at RJD if he believes he is being provided inappropriate health care.

3. Defendants also contend that plaintiff failed to demonstrate good cause for such an examination. Defendants contend that plaintiff arguments concerning an FBI investigation and Dr. Karan's alleged termination are not based on plaintiff's personal knowledge and therefore are not admissible under Rule 602 of the Federal Rules of Evidence. Defendants submit that plaintiff's health care needs are being monitored and appropriately treated as demonstrated by the medical records provided with their opposition. Defendants note that plaintiff was seen by a

2

1  vascular surgeon, and was then examined by Dr. Sarah Ghayouri, who concluded plaintiff's left
2  iliac aneurysm was stable, and that because plaintiff presented with no vascular complaints, and
3  his peripheral pulses were bilaterally normal, without any calf pain or claudication, a CT
4  aortogram was not medically necessary.  (ECF No. 77 at 4.)  Plaintiff's complaints were noted as
5  attributable to plaintiff's left inguinal hernia, which was described as "small."  (Id.)  Defendants
6  noted that Dr. Ghayouri discussed with plaintiff a surgical procedure to repair the left inguinal
7  hernia, which was described as "an elective procedure."  (Id.)  In addition, defendants contend
8  that plaintiff failed to identify who would perform the medical examination and where it would
9  take place.  If such examination were to take place outside RJD, it would add transportation and
10 security costs, and defendants argue that all such costs mitigate against plaintiff's request,
11 particularly where plaintiff can seek a remedy through the CDCR Health Care Appeal procedures.

12         In reply, plaintiff reiterates that he was referred for a surgical consult for hernia repair on
13 February 8, 2011, while plaintiff was housed at Wasco reception.  Plaintiff was then transferred to
14 HDSP, but because plaintiff presented as a high risk patient, it was agreed that a medical transfer
15 was appropriate for plaintiff's hernia repair surgery.  Plaintiff has now been waiting 44 months
16 for hernia repair.  Plaintiff recites from the court's March 28, 2014 order: "Plaintiff's hernia is a
17 serious medical need, . . . the Ninth Circuit has noted that . . . a prisoner states a cognizable
18 deliberate indifference claim where prescribed treatment for a hernia has been delayed for more
19 than a year."  (ECF No. 78 at 2, citing ECF No. 35 at 3.) (citations omitted).  Plaintiff states that
20 he has filed regular medical complaints about constant hernia pain.  Plaintiff claims that the last
21 time he saw Dr. Ghayouri in an emergency visit for hernia pain, she only confirmed the hernia
22 was not "incarcerated," and sent plaintiff back to housing after only a two to three minute exam.
23 (ECF No. 78 at 3.)  Plaintiff states there was no vascular exam during this visit.

24         On August 28, 2014, plaintiff states he saw Dr. Solomon only to hear plaintiff's medical
25 appeals.  Plaintiff stated that Dr. Solomon confirmed that Dr. Zepp and Dr. Syverson had already
26 recommended hernia repair surgery, attached the documents to the medical appeal, and forwarded
27 them to medical for approval.  (ECF No. 78 at 4.)  Plaintiff alleges that Dr. Solomon "informed
28 plaintiff that the hernia issue should [have] been handled long before this medical visit."  (Id.)

Plaintiff states that the medical appeal is still in processing with a September 17, 2014 deadline. (Id.) Plaintiff alleges that RJD medical administrators are well aware of plaintiff's medical issues, but are ignoring them and deliberately depriving plaintiff of his hernia repair surgery, exposing him to serious harm and pain in violation of the Eighth Amendment. (ECF No. 78 at 4.)

Rule 35

Rule 35(a) of the Federal Rules of Civil Procedure provides as follows:

> (a) Order for an Examination.
>
> (1) In General. The court where the action is pending may order a party whose mental or physical condition--including blood group--is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> (2) Motion and Notice; Contents of the Order. The order:
>
> (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>
> (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a). Plaintiff must demonstrate good cause for either a physical or mental examination. Schlagenhauf v. Holder, 379 U.S. 104, 114-22 (1964).

Medical Records

Defendants provided the following medical records:

On May 16, 2014, plaintiff requested health care services, noting his abdominal hernia and "a large lump rising in area of left iliac artery aneurysm. Both issues are becoming more painful, and bothersome." (ECF No. 77 at 35.) The RN noted that plaintiff was seen by his primary care physician on April 17, and that he was scheduled for follow-up appointment on June 2, 2014. (ECF No. 77 at 35.)

On June 4, 2014, plaintiff was examined by Dr. Pankaj Karan, who noted that plaintiff's umbilical hernia was stable, no evidence of obstruction, but that they would keep monitoring it. (ECF No. 77 at 33.) Dr. Karan stated "[t]here is no point for surgery at this point." (Id.) Dr. Karan noted plaintiff's "left iliac aneurysm status post stenting in the past now with complaints of

4

1   some swelling and tenderness for the last 2 months." (Id.)  Dr. Karan stated she would refer

2   plaintiff to a vascular surgeon "to take a look at this situation." (Id.)

3   On June 4, 2014, Dr. Karan issued a referral to vascular surgery for plaintiff. (ECF No.

4   77 at 13.)  Plaintiff was scheduled for thirty day follow-up for the aneurysm in his left groin. (Id.)

5   On June 4, 2014, or June 6, 2014, it appears that plaintiff was also prescribed some form of drug,

6   but the handwriting is illegible. (ECF No. 77 at 14.)

7   On July 2, 2014, plaintiff was examined by Dr. Patrick Freyne, who reported, in pertinent

8   part:

9   > ASSESSMENT/PLAN:
10  > 1. Hypertension, at goal. Continue metoprolol and amlodipine.
11  > 2. History of coronary artery disease, stable. Continue statin, aspirin, p.r.n. nitroglycerine and blood pressure control.
12  >
13  > 3. Benign prostatic hypertrophy, stable. Continue terazosin,
14  > 4. Umbilical hernia, stable. No indication for surgery at this time. Will follow closely.
15  > 5. Hyperlipidemia, at goal. Continue stat in,
16  > 6. Left iliac aneurysm, status post stenting, stable. Follow up with Vascular Surgery.
17  >
18  > EDUCATION: TABE score 6.4. The patient agrees with the treatment plan, goals and followup. All questions are answered.
19  > FOLLOWUP: Plan for followup with Primary Care physician in 60 days.
20

21  (ECF No. 77 at 27-28.)

22  On July 8, 2014, plaintiff requested health care for dizziness; on July 9, 2014, plaintiff

23  denied symptoms or pain. (ECF No. 77 at 25.)

24  On July 13, 2014, plaintiff requested to see a doctor, complaining that he had been

25  experiencing extreme sharp pains in the same area as his stented aneurysm -- left iliac artery --

26  swelling had also increased. (ECF No. 77 at 19.)  Plaintiff reported his pain level at between 7

27  and 9 at times. (Id.)  Plaintiff was referred to his primary care physician marked "Stat." (Id.)

28  Plaintiff was seen by an R.N. who noted that a follow-up was set for July 15, 2014, with his

primary care physician. (ECF No. 77 at 22.) "Per Dr. Ghayouri no need to send out. Refer to PCP [illegible] to be evaluated for surgery consult (PCP findings of hernia symptoms). (ECF No. 77 at 22.)

On July 14, 2014, plaintiff was examined by Dr. Ghayouri. (ECF No. 77 at 23-23.) Dr. Ghayouri reported, in pertinent part:

> ASSESSMENT/PLAN:
>
> 1. Reducible left inguinal hernia. The patient was assured and elective surgical treatment was discussed.
>
> 2. Coronary artery disease, stable. Continue current medication hypertension and hypercholesterolemia, statin, aspirin; nitroglycerin, and beta blocker.
>
> 3. Benign prostatic hypertrophy, stable.
>
> 4. Umbilical hernia, stable.
>
> 5. Past history of left iliac aneurysm, status post stenting, stable. The patient was referred to see a vascular surgeon due to recent complaint of left groin swelling. Vascular surgeon had requested a CT aortogram, abdominal and lower extremities bilaterally with run-off and contrast prior to the visit. After examination of the patient, most of the patient's complaint was in regard to this small reducible left inguinal hernia. I do not see any indication at this time for a GT aortogram of abdominal and lower extremities. Since the patient does not have any vascular complaints, peripheral pulses are bilaterally normal. Patient denies any type of calf pain or claudication. This was deferred at the present time.
>
> EDUCATION: Discussed the assessment and plan, medication, diet, exercise, weight management. He verbalized understanding. Effective communication was achieved. He summarized information, answered questions verbally and nonverbally. ·
>
> EFFECTIVE COMMUNICATION: I discussed with the patient findings and treatment options, including their risks and benefits. The importance of compliance was discussed. Urgent care precautions were discussed. The patient is to return to clinic if not significantly better. The patient's questions were answered. I spoke slowly, clearly, using simple language.
>
> The patient verbalized, in his own words, understanding and agreed to treatment plan, to my satisfaction.
>
> FOLLOWUP: PCP followup p.r.n. and in 30 days.

(ECF No. 77 at 24.)

////

1  The records provided by defendants reflect that plaintiff is being p[rescribed the following
2  medications at RJD:
3  metoprolol tartrate - for high blood pressure, angina, irregular heart rhythm; symptoms
4  caused by overactive thyroid gland; terazosin - for symptoms of enlarged prostate;
5  amlodipine besylate - a calcium channel blocker to reduce blood pressure; and lbuprofen 600 mg
6  two times per day for pain.  (ECF No. 77 at 9-10.)
7  mirtazapine - antidepressant (ECF No. 77 at 12.)
8  Crestor - for high cholesterol and high triglycerides in the blood (ECF No. 77 at 49.)
9  Nitroglycerin - for chest pain (ECF No. 77 at 62)
10  Plaintiff provided a copy of his August 31, 2014 request for health care services in which
11  he states that the prescribed Ibuprofen is no longer relieving his hernia pain.  (ECF No. 78 at 6.)
12  Plaintiff requested that he either be provided hernia repair surgery, or that he be prescribed
13  something to relieve his pain, which he described as a constant 8 to 9 on a scale of ten.  (ECF No.
14  78 at 6.)

15  Discussion

16  First, plaintiff's allegations as to Dr. Karan are not substantiated with credible evidence
17  and plaintiff fails to demonstrate his allegations are within his personal knowledge.  Defendants
18  provided copies of records from the California Department of Consumer Affairs that reflect that
19  Dr. Freyne and Dr. Ghayouri are licensed doctors in good standing.  (ECF No. 77 at 66-70.)  The
20  Consumer Affairs website also reflects that Dr. Pankaj Karan, License Number 54018, holds a
21  current license, and has no public record actions noted in the same fashion as the records for Dr.
22  Freyne and Dr. Ghayouri.  Department of Consumer Affairs, BREEZE,
23  <https://www.breeze.ca.gov> (accessed Sept. 18, 2014).  Thus, plaintiff's allegations as to Dr.
24  Karan are disregarded.
25  Second, defendants' objections to the Rule 35 examination are well-taken, and the
26  undersigned is persuaded that a medical examination under Rule 35 is not the appropriate remedy.
27  Rather, it appears that plaintiff needs hernia repair surgery and/or better pain management for the
28  pain associated therewith.

7

Third, the undersigned is concerned that plaintiff has not yet received hernia repair surgery, despite being transferred to RJD for that purpose. That said, the last time the parties filed status reports concerning plaintiff's medical care at RJD, it was unclear whether hernia repair was appropriate given plaintiff's other medical issues, as well as his concern about the risks of such surgery:

> On April 16, 2014, plaintiff filed a status report confirming his transfer to RJD, and stated that on April 11, 2014, he saw the RJD clinic doctor who "ordered more examinations and tests." (ECF No. 40 at 2.) Plaintiff also stated that due to his age, heart and other health issues, as well as the delay in receiving the surgery, and because there have been recent fatalities caused by infections resulting from screens used in hernia repair surgeries at RJD, plaintiff "may have to live with the pain from [his] abdominal hernia" rather than elect to have hernia repair surgery. (ECF No. 40 at 2.) However, plaintiff will discuss his options with the assigned surgical team.

(ECF No. 41 at 2.) Plaintiff has failed to address these concerns in the instant motion, and the medical records do not articulate the nature of the discussions medical professionals at RJD have had with plaintiff concerning hernia repair surgery. Rather, it appears their focus has been on his iliac aneurysm. On this record, the court is unable to construe plaintiff's filing as a request for injunctive relief seeking hernia repair surgery. Moreover, it appears that plaintiff may have obtained some assistance through the medical appeals process with Dr. Solomon. The September 17, 2014 deadline has now passed, and the court is unaware of any further progress, or lack thereof, that may have been accomplished through this appeal process.

For all of these reasons, plaintiff's motion for Rule 35 examination is denied. However, the parties are advised that despite plaintiff's transfer to RJD, the court is unwilling to require plaintiff to start this journey again, by first exhausting his administrative claims at RJD and then filing a new civil rights action in the Southern District of California. A federal court has the power to issue orders in aid of its own jurisdiction, 28 U.S.C. § 1651(a), and to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984); Gon v. First State Ins. Co., 871 F.2d 863 (9th Cir. 1989).

////

A defendant acts with deliberate indifference when he knowingly fails to respond to a serious medical need and, thereby, inflicting harm on the plaintiff. See Farmer v. Brennan, 511 U.S. 825, 837-42 (1994); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (defendant is deliberately indifferent when he purposefully fails to respond to a prisoner's pain). Deliberate indifference may appear when a defendant denies, delays, or otherwise interferes with medical treatment. See Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir.1988). Nevertheless, "[d]eliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105-06).

Recently, in Colwell v. Bannister, 2014 WL 3953769 (9th Cir. Aug. 14, 2014), the Ninth Circuit reiterated its prior findings:

> In Snow v. McDaniel, . . ., an NDOC death row inmate brought an Eighth Amendment claim after the Utilization Review Panel repeatedly refused to authorize hip replacement surgery recommended by outside specialists and a treating physician. 681 F.3d at 983-84. The Panel denied surgery for approximately two years, concluding that the condition could be treated with pain medication even though it was an "emergency" and "potentially life threatening." Id. The Snow court held that "the circumstances . . . raise [d] an inference that the defendants were unreasonably relying on their own non-specialized conclusions" instead of the recommendations of the plaintiff's treating specialists. Id. at 986. Therefore, "a reasonable jury could conclude that the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendations for surgery was medically unacceptable under all of the circumstances." Id. at 988; see also Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992) ("By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the 'unnecessary and wanton infliction of pain.'"), overruled in part on other grounds as recognized in Snow, 681 F.3d at 986.

Colwell, 2014 WL 3953769 at *5. See also Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1992),[1] for the proposition that a hernia is "'an injury that reasonable doctor or patient would find important and worthy of

---

[1] McGuckin was overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

9

comment or treatment,'" 974 F.2d at 1059-60; and citing <u>Jones v. Johnson</u>, 781 F.2d 769, 771 (9th Cir.1986) ("He alleges suffering and pain from his herniated condition. . . .")). In <u>Colwell</u>, the court was addressing the lack of treatment for an inmate's cataract, which, while serious, usually does not cause pain.

Here, two prior prison physicians have issued referrals for plaintiff to receive hernia repair surgery, for which plaintiff has been waiting since 2011, or 44 months. Plaintiff now appears to contend that his hernia pain level has increased and is constant at a level of 8 to 9. The medical records provided by defendants reflect that plaintiff is being prescribed Ibuprofen, which plaintiff now contends is insufficient to alleviate his hernia pain.

Therefore, the denial of plaintiff's motion for Rule 35 medical examination is without prejudice to plaintiff filing a motion for injunctive relief should health care professionals at RJD continue to deny plaintiff appropriate pain medication while he awaits the results of his health care appeal through Dr. Solomon. Of course, plaintiff must allege facts demonstrating such deliberate indifference and supporting such relief. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008) (citations omitted).

For all of the above reasons, IT IS HEREBY ORDERED that plaintiff's request for examination (ECF No. 68) is denied without prejudice.

Dated: September 19, 2014

/ceci1923.r35

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE