1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  GARY CECIL,                              No.  2:13-cv-1923 TLN KJN P

12                 Plaintiff,

13          v.                                FINDINGS & RECOMMENDATIONS

14  JEFF BEARD, et al.,

15                 Defendants.

16

17  I.  Introduction

18          Plaintiff is a state prisoner housed at R. J. Donovan Correctional Facility ("RJD"),

19  proceeding without counsel.   On October 22, 2014, plaintiff filed a motion for temporary

20  restraining order seeking an order requiring the provision of pain medication and pain

21  management forthwith.  On October 24, 2014, defendants were directed to respond to plaintiff's

22  motion for temporary restraining order.  On October 31, 2014, counsel for defendants filed an

23  opposition to plaintiff's motion, including a declaration from Dr. Casian, one of plaintiff's

24  treating physicians at RJD, as well as copies of plaintiff's medical records.  (ECF No. 88.)

25  Plaintiff has not filed a reply.

26          As set forth below, the undersigned recommends that plaintiff's motion for temporary

27  restraining order be denied.

28  ////

II. The Parties' Arguments

In his motion, plaintiff claims that he is in excruciating pain from the hernia and the aortic aneurysm, and that the 600 mg. of Ibuprofen no longer controls such pain. Plaintiff states that the October 3, 2014 c-scan revealed a "serious anomaly" with the stented aneurysm that will most likely require immediate surgery. (ECF No. 86 at 3.) Despite his alleged constant pain complaints, plaintiff avers that his primary care physician refused plaintiff's request for additional pain relief, stating that the doctor was going to allow the hernia specialist to deal with plaintiff's hernia pain prior to surgery, and the primary care physician would address plaintiff's post-surgical pain issues, if any. (ECF No. 86 at 1.) However, the hernia specialist referral is still pending approval, so it is unclear at this time when plaintiff might be examined by the specialist. Plaintiff provided a copy of his October 1, 2014 health care services request form in which he states that he is still having excruciating hernia pain. (ECF No. 86 at 5.) Plaintiff reminds the court that his initial request for hernia repair was made on February 8, 2011.

In opposition, defendants provide evidence that there is no anatomical or physiological basis for the iliac aneurysm to cause plaintiff unremitting pain. (ECF No. 88 at 10.) Dr. Casian declares that plaintiff's medical records do not show that plaintiff suffers "substantial pain or limitations from his hernias." (ECF No. 88 at 11, 12.) Dr. Casian addressed plaintiff's concern regarding pain medications as follows:

> 11. Mr. Cecil currently has been prescribed 600 mg. Ibuprofen, taking one tablet, twice a day, for pain, along with aspirin. A higher dose of Ibuprofen cause gastritis, ulcers, kidney failure, liver failure, fluid retention, gastrointestinal bleeding and death. I do not believe that a higher dose of Ibuprofen can be safely prescribed.
>
> 12. Narcotic pain medication is disfavored by pain management experts for pain not resulting from cancer, and it is my understanding that the California Medical Board is initiating medical license revocation proceedings against physicians who unnecessarily prescribe narcotic pain medication, and has issued a "one pill can kill" warning as part of a campaign to reduce the prescription of narcotic pain medication. The use of narcotics can cause respiratory depression, fluid retention, severe constipation, itching, sedation and loss of balance, addiction and death. In my experience, inmates have a high addiction rate. Inmates who are prescribed narcotics face pressure from addicts in the prison to share or sell their drugs. There are deaths each year in the prison associated with overdose or drug dealing.

1 (ECF No. 88 at 12.)

2      Dr. Casian states that plaintiff suffers from myriad health issues:  history of coronary

3 artery disease, ischemic cardiomyopathy, peripheral vascular disease, with stenting of an iliac

4 arterial aneurysm, cataract, macular degeneration, umbilical hernia, and left inguinal hernia.

5 During prior physical examinations, plaintiff complained of "continued lower extremity pain;"

6 however, Dr. Casian noted that plaintiff has been "independent in all activities of daily living, and

7 ambulates using a cane or walker."  (ECF No. 88 at 10.)  Dr. Casian did not record "any

8 complaints about [plaintiff's] abdomen or hernia."  (Id.)

9      On October 3, 2014, a follow-up CT angiogram was performed, which showed a

10 "thrombosed (clotted) 3.4 cm aneurysm."  (ECF No. 88 at 10, 15.)  The medical plan for this

11 aneurysm is for plaintiff to continue aspirin, and to follow up with the vascular surgeon, which

12 Dr. Casian anticipated would take place within the next three weeks.  (ECF No. 88 at 10.)

13 Plaintiff is followed by cardiology for chest pain, and takes five or six drugs to treat his

14 cardiovascular disease.  (ECF No. 88 at 11.)  Plaintiff is being followed by vascular surgery

15 specialists for his abnormal circulation.  Dr. Casian avers that plaintiff's circulation is adequate

16 and does not impair his daily activities, and that hernia surgery or surgery to improve his

17 circulation is risky.  (ECF No. 88 at 10.)  Indeed, as a "high risk" patient, plaintiff "could die on

18 the operating table."  (ECF No. 88 at 12.)

19 III.  Legal Standards

20      Plaintiff seeks a temporary restraining order.  A temporary restraining order is an

21 extraordinary and temporary "fix" that the court may issue without notice to the adverse party if,

22 in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable

23 injury, loss, or damage will result to the movant before the adverse party can be heard in

24 opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of a temporary restraining order is to

25 preserve the status quo pending a fuller hearing.  See Fed. R. Civ. P. 65.  It is the practice of this

26 district to construe a motion for temporary restraining order as a motion for preliminary

27 injunction.  Local Rule 231(a); see also Aiello v. OneWest Bank, No. 2:10-cv-0227 GEB EFB,

28 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by

1  the same standard applicable to preliminary injunctions.") (internal quotation and citations

2  omitted).

3          The party requesting preliminary injunctive relief must show that "he is likely to succeed

4  on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

5  the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v.

6  Natural Res. Def. Council, 555 U.S. 7, 20 (2008).  The propriety of a request for injunctive relief

7  hinges on a significant threat of irreparable injury that must be imminent in nature.  Caribbean

8  Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

9          Alternatively, under the so-called sliding scale approach, as long as the plaintiff

10 demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the

11 public interest, a preliminary injunction may issue so long as serious questions going to the merits

12 of the case are raised and the balance of hardships tips sharply in plaintiff's favor.  Alliance for

13 Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious

14 questions" version of the sliding scale test for preliminary injunctions remains viable after

15 Winter).

16         The principal purpose of preliminary injunctive relief is to preserve the court's power to

17 render a meaningful decision after a trial on the merits.  See 11A Charles Alan Wright & Arthur

18 R. Miller, Federal Practice and Procedure § 2947 (3d ed. 2014).  Implicit in this required showing

19 is that the relief awarded is only temporary and there will be a full hearing on the merits of the

20 claims raised in the injunction when the action is brought to trial.

21         In cases brought by prisoners involving conditions of confinement, any preliminary

22 injunction "must be narrowly drawn, extend no further than necessary to correct the harm the

23 court finds requires preliminary relief, and be the least intrusive means necessary to correct the

24 harm."  18 U.S.C. § 3626(a)(2).

25 IV.  Discussion

26         A defendant acts with deliberate indifference when he knowingly fails to respond to a

27 serious medical need and, thereby, inflicting harm on the plaintiff.  See Farmer v. Brennan, 511

28 ////

4

1  U.S. 825, 837-42 (1994); <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (defendant is

2  deliberately indifferent when he purposefully fails to respond to a prisoner's pain).

3        In his request, plaintiff claims he has been complaining of excruciating pain "for literally

4  years," yet provided only one health care services request form, dated October 1, 2014, in which

5  he claims he was suffering from excruciating hernia pain.  (ECF No. 86 at 2, 5.)  Plaintiff failed to

6  file a reply to defendants' opposition to his motion.  Thus, plaintiff has failed to rebut defendants'

7  evidence that medical records do not reflect that plaintiff has complained of unremitting pain

8  from the hernia or the aneurysm, or that prison officials at RJD are inappropriately treating

9  plaintiff for his myriad health conditions.  Rather, the evidence demonstrates that plaintiff, 68

10  years old, is being conservatively and cautiously treated based on his status as a "high risk"

11  patient suffering from very serious heart conditions and vascular disease.  Given the medical

12  evidence provided by defendants, plaintiff fails to demonstrate the likelihood of irreparable harm

13  or that the balance of hardships tips sharply in plaintiff's favor.

14        Moreover, in the underlying complaint, in addition to monetary damages, plaintiff sought

15  an order for plaintiff's "high risk medical transfer" to a prison near a hospital, claiming that High

16  Desert State Prison ("HDSP") was not appropriate housing for a high risk medical patient such as

17  plaintiff, and named defendants employed at HDSP.  (ECF No. 10 at 3.)  Plaintiff alleged that

18  defendants were deliberately indifferent to plaintiff's serious medical needs by failing to transfer

19  plaintiff or to provide hernia repair surgery.  Plaintiff also alleged that he had "repeatedly

20  complained about hernia pain with nothing being done."  (ECF No. 10 at 5.)

21        A plaintiff cannot, as a general matter, seek injunctive relief in a case against parties who

22  are not named as defendants in that case.  <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 395

23  U.S. 100, 89 S. Ct.1562 (1969) (stating that the court cannot issue an order against individuals

24  who are not parties to a suit pending before it); <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir.

25  2007) ("Unrelated claims against different defendants belong in different suits[.]").

26        In the instant complaint, plaintiff did not allege inappropriate treatment for his myriad

27  other medical conditions, and did not allege that he was experiencing pain from his aneurysm

28  located near the hernia.  In early April of 2014, plaintiff was transferred to RJD, which is located

1    in San Diego, a major metropolitan city that is closer to hospitals and specialists than plaintiff was

2    when housed at HDSP in Susanville.  In addition, Dr. Casian provided evidence that plaintiff is

3    receiving appropriate medical care at RJD, which includes prescriptions for pain medication, and

4    that Dr. Casian is in the process of determining whether different pain medications can be

5    administered safely, including discussions with plaintiff's surgery consultant.  (ECF No. 88 at 12-

6    13.)  Thus, plaintiff's treatment for his hernias, including the prescription for pain relief

7    associated therewith, is complicated by plaintiff's serious and unrelated health conditions.

8            "[A] difference of opinion between a prisoner-patient and prison medical authorities

9    regarding treatment does not give rise to a[§ ]1983 claim."  Franklin v. Oregon, 662 F.2d 1337,

10   1344 (9th Cir. 1981).  To establish that such a difference of opinion amounted to deliberate

11   indifference, the prisoner "must show that the course of treatment the doctors chose was

12   medically unacceptable under the circumstances" and "that they chose this course in conscious

13   disregard of an excessive risk to [the prisoner's] health."  See Jackson v. McIntosh, 90 F.3d 330,

14   332 (9th Cir. 1996); see also Wilhelm v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's

15   awareness of need for treatment followed by his unnecessary delay in implementing the

16   prescribed treatment sufficient to plead deliberate indifference); see also Snow, 681 F.3d at 988

17   (decision of non-treating, non-specialist physicians to repeatedly deny recommended surgical

18   treatment may be medically unacceptable under all the circumstances.)

19           Plaintiff has failed to adduce evidence demonstrating that the course of treatment

20   prescribed at RJD is medically unacceptable under the circumstances.  Rather, at most, plaintiff's

21   motion reflects a difference of opinion as to the administration of pain medications.  In addition,

22   contrary to plaintiff's allegation that the "serious anomaly" discovered in the October 3, 2014 CT

23   scan would "most likely" require "immediate surgery" (ECF No. 86 at 3), Dr. Casian explains

24   that plaintiff does not require emergency surgery for this condition because his circulation is

25   adequate and does not impair his daily activities, and because of the surgical risks involved in a

26   surgical procedure to address the aneurysm.  (ECF No. 88 at 10.)  Given plaintiff's complex

27   medical history, high risk medical patient status and very serious medical conditions, the court is

28   not inclined to entertain further motions for injunctive relief concerning his medical care at RJD

1 | absent compelling evidence that plaintiff is subject to irreparable injury specifically related to his

2 | need for hernia repair surgery.

3 |      Thus, for all of the above reasons, plaintiff's motion for temporary restraining order

4 | should be denied.[1]

5 | V.  Conclusion

6 |      IT IS HEREBY RECOMMENDED that plaintiff's motion for temporary restraining order

7 | (ECF No. 86) be denied.

8 |      These findings and recommendations are submitted to the United States District Judge

9 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

10 | after being served with these findings and recommendations, any party may file written

11 | objections with the court and serve a copy on all parties.  Such a document should be captioned

12 | "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13 | objections shall be served and filed within fourteen days after service of the objections.  The

14 | parties are advised that failure to file objections within the specified time may waive the right to

15 | appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 | Dated:  November 13, 2014

17 |

18 | /ceci1923.tro

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[1] In plaintiff's motion, he also alleges that he was prescribed the wrong type of walker and that medical has allegedly been removing the type of walker prescribed by Dr. Casian.  Plaintiff must pursue his administrative remedies against appropriate parties at RJD in connection with such claims.  Hazeltine, 395 U.S. at 100.

7